Commonwealth *v.* Lawton, Appellant.

Argued October 3, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Leonard Turner,* for appellant.

*Robert L. Kunzig,* Deputy Attorney General, with him *Bruce R. Wright,* Assistant Deputy Attorney General and *Robert E. Woodside,* Attorney General, for appellee.

OPINION BY RHODES, P. J., November 15, 1951:

Appellant, a sewer connection inspector in the Department of Public Works of the City of Philadelphia, was indicted, tried, and convicted on bills of indictment charging him with common law extortion. Appellant does not question the sufficiency of the Commonwealth's evidence which established that he ex-

tracted approximately $2,000 from various plumbing contractors by withholding approval of sewer connections until illegal fees were paid to him.

Appellant contends that, under the various statutes and ordinances involved, the office of "sewer connection inspector" had in fact been abolished and its duties transferred to the Department of Public Health, and that he could not be guilty of extortion committed in an office which did not exist. The City Ordinance of April 3, 1883, page 86, made it the duty of the Chief Engineer and Surveyor of the Survey Department to appoint two competent persons to supervise all sewer connections.

Under the Charter Act of June 1, 1885, P. L. 37, 43, the Department of Public Works was given jurisdiction over "surveys, engineering, sewerage, drainage and dredging . . ." However, the Act did not repeal the many ordinances which controlled the various aspects of city government. Appellant's argument is to the effect that the office of sewer connection inspector under the ordinance of 1883 was eliminated by the Act of June 11, 1915, P. L. 954, §2, 53 PS §3854. Reference is also made to the Act of June 7, 1911, P. L. 680, 53 PS §§4094-96, 4151. Section 1 of the Act of 1915, 53 PS §3851, provides that in cities of the first class there shall be a Division of Housing and Sanitation attached to the Department of Public Health and Charities. Section 2 of that Act, 53 PS §§3852, 3854, provides for a chief of the Division of Housing and Sanitation, who "shall forthwith organize a subdivision thereof, which shall have charge and control of all matters relating to the construction and reconstruction of the plumbing and house connections of all buildings." It is obvious from the evidence in the present case that the inspection of "plumbing and house connections of all buildings" by the Department of Public Health, Bureau of Housing and Sanitation, is not necessarily inconsist-

ent with the provisions of the ordinance of 1883. But appellant insists that "the sewer connection inspectors" set up in the 1883 ordinance and placed by the Charter Act of 1885 under the Department of Public Works were abolished by the Act of 1915, which put all matters relating to house connections under the Department of Public Health and Charities. Appellant's argument on this point rests on the premise that "sewer connections" and "house connections" are identical. The evidence shows that these connections were for the most part distinct, although at times inaccurately designated.

It appears from the record that a sewer connection is a connection of the city sewer or sewer lateral with the trap or the house plumbing at or near the curb line. It was appellant's duty to inspect such connections, for which permits were issued, and make a daily return of the inspections made. He had unreviewable authority to approve these connections, although his disapproval was reviewable. A house connection is variously described, including any connection of the pipe between the house and the lateral and relating to the drainage system or plumbing work of the house. Appellant had no authority over such connection. The curb trap and the vent are under the jurisdiction of the Department of Public Health. Multiple inspection would not affect the purpose of the inspection made by appellant or his authority to approve or disapprove the connection with the sewer or sewer lateral. It would make no difference, as far as the position and duties of appellant were concerned, if the connection at the sewer or sewer lateral was also considered a "house connection" by the Department of Public Health, as obviously the functions of the two departments are different and the purpose of respective inspections would not be the same. In the opinion of the court below, Judge Bok said: "Mr. Baxter, Chief Engineer for the

Department of Public Works, testified that they [the terms sewer inspector and sewer connection inspector] are loosely used interchangeably, since the joint that connects the City's sewer system to the house system is a sewer connection if one looks at it from the sewer side and a house connection if one looks at it from the house side. He added, positively, that the inspection of this connection, however regarded, was defendant's duty."

We agree with the conclusion of the court below that the Act of 1915 did not repeal the ordinance of 1883 or abolish the position of "sewer connection inspector" held by appellant. The Act of June 25, 1919, P. L. 581, Article VI, section 3, as amended, 53 PS §3043, as in the Act of 1885, provides that: "The department of public works shall have the care, management, administration, and supervision of . . . surveys, engineering, sewerage, drainage, . . ."

Appellant's first assignment was as a laborer in the Bureau of Engineering, Surveys, and Zoning of the Department of Public Works, in 1930. Under a Civil Service examination he was provisionally appointed inspector of drain connections in 1939, and permanently appointed in 1940. His title was changed to sewer connection inspector in 1943. As of 1944 he was placed on an annual salary of $2,160, which was increased yearly by ordinance to the present level of $2,940, in 1948. Appellant is paid by the Department of Public Works, Bureau of Engineering, Surveys and Zoning. He took no oath of office, he was not bonded, and the term of his office was not definite.

The Commonwealth's evidence established that appellant was appointed to the position of sewer connection inspector created by the ordinance of 1883; that he performed the duties and exercised the authority incident to such position; that he withheld his ap-

proval of sewer connections until illegal fees were paid to him; and that his salary was paid by the city. Under these circumstances, his argument that he occupied no such position, and that therefore he could not be indicted and convicted of common law extortion is entirely devoid of merit. See *Com. v. Brown,* 23 Pa. Superior Ct. 470, 491; *Com. v. Wilson,* 30 Pa. Superior Ct. 26, 30. "Extortion at common law is the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due him, or more than is due, or before it is due. . . . every person occupying an official or a quasi official position, may be guilty of this offense. . . . Any person who acts as an officer, and has assumed an officer's duties, cannot avoid liability by pleading the irregularity of his appointment": *Com. v. Saulsbury,* 152 Pa. 554, 559, 560, 25 A. 610, 611, 612.

Appellant also contends that as a sewer connection inspector he was not a public officer or such an officer as would make him subject to conviction for extortion either as a public officer or at common law. Appellant was not indicted and convicted of extortion as a public officer but rather of common law extortion under section 1101 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §5101, which preserves offenses punishable at common law. Appellant takes a position substantially similar to that of the inspector in the Fire Marshal's Office in *Com. v. Gettis,* 166 Pa. Superior Ct. 515, 72 A. 2d 619. Our statement in the *Gettis* case is applicable here (p. 519 of 166 Pa. Superior Ct., p. 620 of 72 A. 2d): "Under the facts determined by the verdict, the defendant unlawfully took or exacted money (to which he was not entitled) for the performance of his official duty. If he was less than a *public* officer he was nevertheless more than a mere employe, i.e., he was a quasi-public officer and guilty of common law extortion."

At the close of the Commonwealth's case, appellant entered a demurrer to the evidence on the ground, inter alia, that there was a material and fatal variance between the indictments and the proofs, in that the indictments charged appellant with being a "sewer inspector" whereas the proofs showed he was a "sewer connection inspector." The variance, if any, was not substantial. Appellant was aware of the charges he was called upon to meet. He was informed by the evidence, if that were necessary, as to the position or office he occupied and to which he had been appointed. The evidence was conclusive as to his abuse of the power of his position, and he offered no defense. The misdescription of appellant's office in the indictments was merely a formal defect, and the Commonwealth had the right to amend at any time. Section 13, Act of March 31, 1860, P. L. 427, 19 PS §433. Appellant was not prejudiced at the trial by the misdescription, and he has not been deprived thereby of any right; he can protect himself on any future indictment for the same offenses by showing that they were identical with those of which he had been convicted on a plea of autrefois convict. See *Com. v. Speiser,* 79 Pa. Superior Ct. 469, 473; *Com. v. Kramer,* 146 Pa. Superior Ct. 91, 107, 108, 22 A. 2d 46. Such a technical defect affords him no basis for a reversal of his conviction which was not only fully justified but required by the evidence.

Judgment and sentence are affirmed; and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.