Commonwealth *v.* Burns et al., Appellants.

Argued June 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before GRIFFITH, P. J.

*Vincent M. Casey,* with him *Arnold D. Sworto, Eugene A. Creany,* and *Margiotti & Casey,* and *Sworto & Creany,* for Burns, appellant.

*John W. Taylor,* with him *Myers, Taylor & Peduzzi,* for Domenick, appellant.

*Ferdinand F. Bionaz,* District Attorney, with him *W. Louis Coppersmith,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., September 12, 1961:

Appellant Frank Burns was indicted for the crime of extortion; and both he and appellant Frank Domenick were indicted for obtaining property by false pretense, and conspiracy to cheat and defraud. They were tried jointly and the jury returned verdicts of guilty on all indictments. Motions for new trials and for arrest of the judgments were filed by both appellants and refused. Judgments of sentence were imposed and entered and these appeals followed.

The facts briefly stated are as follows: Frank Burns was the superintendent of the Cambria County Home located near Ebensburg, Pennsylvania, having been appointed to that office in July of 1940. Frank Domenick was the owner of the Home Baking Company also located in Ebensburg. Prior to 1954 the County Home operated its own bakery for the needs of its patients, but during 1954 the baking equipment became unusable and the County Commissioners resorted to other means of satisfying their bakery needs. For a while the county purchased bread commercially. Later, Burns suggested that he was able to have the bread baked for five cents a loaf at the Home Baking Company if the County of Cambria would furnish the ingredients. This was satisfactory to the County Commissioners and they subsequently procured the needed bakery products on this basis from Domenick and also from Barnett Sklar, who succeeded Domenick as owner of the Home Baking Company. The invoices, evidencing purchases of bread for all of the institutions under the control of the County Commissioners, were submitted to the County Controller and the County Commissioners bearing the approval of Burns. These invoices indicated payment

for bread at the rate of five cents per loaf, the ingredients being supplied by the county. The false pretense and conspiracy indictments were based on the statements by Burns and Domenick that 509,750 loaves were delivered on this basis, whereas in fact, only 215,500 loaves had actually been delivered.

The extortion indictment is based on the charge that Burns received sums in excess of $3,000 from Domenick and Sklar, so that the contract for the purchase of bread by the county would be awarded to the Home Baking Company and continued with it after Sklar succeeded Domenick as the owner of same.

Testimony at the trial was to the effect that Sklar paid Burns a sum of $100 per month, beginning in October 1956, in order to continue the contractual relations that had existed between Domenick and the county, and that Domenick had made similar payments previously. Domenick and Burns conceded that these contributions had been made and received, but contended that they were political contributions to be used by Burns at his discretion. At no time were such contributions paid into the treasury of any political party. The appellants contended further that the agreement for the baking of bread at five cents a loaf, with the county providing the ingredients, had been superseded by an agreement to supply all needed bread and pastries to the county for $34.50 per day, plus ingredients, regardless of the amount or number of items furnished. The jury refused to accept such theory; and no invoice bore any reference to a charge of $34.50 per day as contended by the appellants.

These appeals raise the following questions:

1. Were the prosecutions barred by the statute of limitations?

2. Was the evidence sufficient to support a conviction in any case?

3. Was it an abuse of discretion to permit the district attorney to cross-examine his own witness?

4. Did the lower court err in its charge to the jury on the crime of common law extortion?

### Extortion (Burns-102)

We shall direct our attention first to the indictment against Burns for extortion (102).

It is argued that the statutory period applicable to the bringing of prosecutions for common law extortion is two years[1] and that the proviso found in the Act of 1939, April 6, P. L. 17, section 1 (19 P.S. 211—pocket part) extending the period was intended to apply only to statutory extortion. The case of *Commonwealth v. Neff*, 195 Pa. Superior Ct. 420, 171 A. 2d 561, held that in cases of *conspiracy* to commit common law extortion the statute was six years. In describing conspiracy the proviso refers to "said offenses". The *Neff* case is therefore authority for holding that "said offenses" includes common law extortion.

In resolving the second issue, we conclude that the evidence is sufficient to support the verdict. The issue relating to the status of Burns was submitted to the jury and it found he was such a person as might be prosecuted as a quasi official. Although he was appointed to his office for an indefinite term, took no oath of office and was not bonded, nevertheless, "as superintendent of the County Home, he was in charge of 600 inmates; it was his duty to see that they were fed, sheltered and clothed; it was he who arranged the contract for supplying bread with the Home Baking Company which is involved in the present proceeding; he made all purchases for the County Home sometimes with and sometimes without a requisition; he had the

---

[1] Although the indictment charged the statutory crime of extortion, it was amended without objection to common law extortion.

responsibility to submit invoices for purchases to the County Controller's Office; while he was appointed by the County Commissioners yet the commissioners 'left it up to Mr. Burns' to determine the amount of ingredients to be given to the Home Baking Company; the commissioners kept no record of what was furnished and never checked up on him in any way; he was the supervisor of 80 employes at the County Home and he lived in a separate home purchased by the County and received in addition to all of his living expenses the sum of $400 per month. While the purchases made by Burns were legally subject to approval by the County Commissioners yet it is apparent from the testimony that he was given a free hand and after 19 years in office had become very much an officer and not merely an employe." (Quoted from opinion of lower court.) *Commonwealth v. Wilson*, 30 Pa. Superior Ct. 26; *Commonwealth v. Gettis*, 166 Pa. Superior Ct. 515, 72 A. 2d 619; *Commonwealth v. Lawton*, 170 Pa. Superior Ct. 9, 84 A. 2d 384; *Commonwealth v. Neff*, supra, support such a finding in similar cases.

Further, there was sufficient evidence to submit to the jury on the other elements of the crime. It is conceded that Burns accepted checks for $100 per month from Domenick for many years, and subsequently the same amount in cash from Sklar after he purchased the Home Baking Company. Sklar testified that upon the advice of Domenick he paid this money in order to secure the Home as a customer and that he continued to make these payments until he was dismissed as its baker. In addition to paying Burns he paid $100 additional monthly to Mr. Smithmyer, the assistant superintendent of the Home. The record is devoid of any statement from Burns demanding money or threatening cancellation of the contract if he did not receive it. In fact, Sklar testified that Burns told him he didn't have to pay it. However, there was no assurance by

Burns that the contract would be continued if he stopped making these payments. Domenick testified his payments were made as voluntary political contributions to the Democratic Party. Burns testified that Domenick gave him the checks in one instance as a gift or loan and in others to use for political purposes as he saw fit, and that he used them to pay his expenses in attending various functions in Cambria County to advance his personal political career and thus advance the interests of his political party. He thus admitted that he personally received and expended the money without accounting to anyone, or repaying the loan. The verdict indicates that the jury rejected these explanations and found the facts as testified by Sklar, that the payments were to secure a continuance of his contract.

It is argued further that there is no evidence, direct or circumstantial, to show any threats or pretense of the use of official authority emanating from Burns. The argument is untenable. Common law extortion requires no proof of threat or duress, although proof of the mere taking of money is not sufficient. The burden is on the Commonwealth to prove that the defendant took the money for the performance of his duties. However, where the conduct of a defendant is tantamount to the assertion and use of his official authority as a cover for an act whereby he obtains a pecuniary reward to which he is not entitled, the officer may be convicted of extortion at common law. *Commonwealth v. Norris*, 87 Pa. Superior Ct. 61; *Commonwealth v. Wilson*, supra. We think the language used in the *Wilson* case at page 29, is equally appropriate here: "It is true, the evidence in the present case does not show that the defendant made a specific demand for the payment of money, or made any threat as to what he would do if it was not paid. But the evidence taken as a connected whole fully warranted the court in sub-

mitting to the jury the questions, whether the defendant's conduct was intended, and had the effect, to induce (Domenick and Sklar) to believe, and to act on that belief, that (they) must give him money, or reward him in some way, in order to obtain the (contract they) requested." (Present names and wording substituted are in parentheses.) The language of *Commonwealth v. Hopkins,* 165 Pa. Superior Ct. 561, 567, 69 A. 2d 428, 431, is likewise equally appropriate: "If he took money for performance of such duties, it makes no difference whether it was sought to be disguised as a tip or gratuity."—and, we may add, as a loan or a personal or general political contribution.

The issue was properly submitted to the jury under a charge in which we find no error. Defendant complains that the charge did not include instructions on criminal intent or mens rea. It is noted that the court charged as requested by defendant in his sixth point, which included nothing in reference to criminal intent except as might be inferred by the use of the words, *fraudulently* or *unlawfully.* However, in defining the term extortion, nothing was left unexplained to indicate that the jury must find that Burns took the money on the promise of protection or in the exercise of his influence in the position he held: "Extortion . . . is to take . . . under a claim of protection or in the exercise of influence contrary to good morals and common honesty. . . ." This negatives any idea of an innocent or mistaken acceptance of the money.

#### False Pretense—Conspiracy to Cheat and Defraud Burns and Domenick (103-104-105-106)

The first issue relates to the statute of limitations. It is defendants' contention that it is two years, whereas the Commonwealth contends it is six. The indictments were found by the grand jury on June 9, 1960; the last alleged crime of false pretense was committed

on November 6, 1956 and the last act under the conspiracy was July 31, 1957.

False pretense is such a felony (18 P.S. 4836), and conspiracy to cheat and defraud is such a misdemeanor (18 P.S. 4302), the prosecution for which would be barred after two years from the commission of the offenses or the termination of the conspiracy, *Commonwealth v. Dunie,* 172 Pa. Superior Ct. 444, 94 A. 2d 166, unless that period is extended by one of the provisoes of the Act of 1939, supra, or by the Act of 1945, May 16, P. L. 582, No. 238, section 1 (19 P.S. 213). The only proviso of the general limitations statute is the one previously discussed, but no specific reference is made in it to the crimes under consideration. We are, therefore, asked by the Commonwealth to include in the proviso these crimes by reason of the specific inclusion therein of the crimes of malfeasance, misfeasance, or nonfeasance in office, in order to secure a reasonable interpretation as we are required to do by the Statutory Construction Act of 1937, May 28, P. L. 1019, article IV, section 52 (46 P.S. 552). It is argued that since prosecutions for those crimes in this case are forbidden by the Criminal Code, Act of 1939, June 24, P. L. 872, section 1103 (18 P.S. 5104), since the crimes under consideration are given statutory status, that the statutory period provided by the proviso for the common law offenses should likewise apply to the statutory ones; otherwise the result would be absurd. This argument would have more weight were it not for the fact that the proviso specifically mentions other crimes that could also be classed as acts of malfeasance, misfeasance, etc., viz., extortion and blackmail by color of office, embezzlement of public moneys and property, and fraudulent conversion of public money and property.

This case is ruled by the case of *Commonwealth v. Russo,* 177 Pa. Superior Ct. 470, 111 A. 2d 359. Therein the lower court ruled that the acts of the defendants

amounted to misfeasance in office and therefore the six year period governed, but this Court reversed and said, "But the insuperable difficulty in the way of adopting the lower court's conclusion is that these defendants were not indicted for misfeasance in office nor could they have properly been so indicted for the reason that a municipal police officer in Pennsylvania is merely an employe and not a public officer within the provision of the 1939 Act." In our present case these defendants could not be prosecuted for malfeasance or misfeasance, although for a different reason, viz., the adoption of a statutory position covering their offense. The difference in reasons does not affect the result. Under no circumstances, except possibly as a co-conspirator, could Domenick be charged with malfeasance, misfeasance, or nonfeasance, even though prosecutions were possible for the common law offenses. He was not an official of any kind.

The Act of 1945, supra, has no application since the crimes covered by the indictment could be committed by anyone and the relationship of the defendants to the County of Cambria is not an essential element. *Commonwealth v. Kauffman*, 190 Pa. Superior Ct. 444, 154 A. 2d 269.

We are constrained to conclude that the statute of limitations of two years is a bar to the prosecution of the indictments 103-104-105-106. The proviso enumerates the crimes for which the period of the statute was extended, and the conspiracy feature refers to the same crimes, therefore our conclusion is applicable to both the indictments for false pretense as well as to those of conspiracy.

### Cross-Examination of Farrell

The final issue before us is whether the trial judge abused his discretion in permitting the district attorney to cross-examine his own witness, P. H. Farrell,

after pleading surprise. Mr. Farrell was a former County Commissioner of Cambria County and testified to the arrangements for Domenick to supply bread at five cents a loaf. Later he testified as to the arrangement whereby Domenick was to supply all needed bread for $34.50 per day regardless of the amount required or furnished. This was the cause of the district attorney's surprise.

Since this testimony is unrelated to the charge of extortion it constitutes harmless error, if error it was, since we have ruled out the other charges on the basis of the bar of the statute of limitations.

The judgments of sentence of Frank Burns and Frank Domenick on the charges of false pretense and conspiracy to cheat and defraud on bills 103-104-105 and 106 are reversed and the defendants discharged on those indictments.

The judgment of sentence of Frank Burns on the charge of extortion on bill 102 is affirmed and he is ordered to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of same that had not been performed at the time the appeal was made a supersedeas.