Commonwealth *v.* Tiberi, Appellant.

154

Submitted November 17, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Leonard L. Martino,* and *Martino, Ferris & Zoffer,* for appellant.

*Robert F. Hawk,* First Assistant District Attorney, and *John H. Brydon,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 29, 1976:

The instant appeal arises from appellant's conviction, after a jury trial, of one count of extortion[1] and one count of "macing."[2] Appellant also was charged with bribery[3] and tampering with witnesses,[4] but on those charges the jury found him not guilty. The extortion and macing charges arose from the same series of discussions between appellant, Mr. Tiberi, who was an area superintendent with the Pennsylvania Department of Transportation (PennDot), Jerome Hornyak, a local superintendent with PennDot, and Floyd Critchlow, a heavy equipment operator. The facts giving rise to the verdicts of guilty are as follows:

Prior to April, 1971, Floyd Critchlow operated construction equipment for a private construction company in Butler County. On April 29, 1971, he signed-on with PennDot as an "operator number three." PennDot was scheduled to acquire a piece of equipment called a "grade-all," and Critchlow was a skilled operator of grade-alls. When Mr. Critchlow was hired, Mr. Tiberi was the Butler area superintendent of PennDot, and

1. Act of June 24, 1939, P.L. 872, §303, 18 P.S. §4303 (Appendix 1973).
2. Act of April 6, 1939, P.L. 16, §1, 25 P.S. §2374 (1963).
3. Act of June 24, 1939, P.L. 872, §318, 18 P.S. §4318 (Appendix 1973).
4. Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa. C.S. §4907 (1973).

among his responsibilities with PennDot was the hiring, firing and promotion of workers on various crews in the Butler area. Mr. Tiberi told Mr. Critchlow that, because of his skill and experience at operating grade-alls, he would shortly be promoted to operator number four, with a concomitant increase in his wages—a substantial factor in Critchlow's decision to join PennDot.

In the ensuing months with PennDot, Critchlow asked on several occasions about his promotion, to which appellant replied: "It's political.... We expect a donation when we get these raises." On other occasions appellant complimented Critchlow on the quality of his work and renewed his promise of promotion, but reminded Critchlow that the job was "political," sometimes while rubbing his fingers together in the well-known gesture meaning "money."

During 1972, Tiberi was promoted to regional superintendent, and Jerome Hornyak, Tiberi's co-defendant below, was subsequently promoted to fill Tiberi's job as area superintendent. Critchlow then discussed his promotion with Hornyak, who also remark-ed: "It's political. They will expect a donation." At that time Critchlow told Hornyak that he would not give more than one hundred dollars for the job. Hornyak replied that there were others who wanted the job, but that he would talk to Tiberi and see what he could do for Critchlow. A few weeks later Hornyak advised Critchlow that he had talked to Tiberi, and that one hundred dollars would be sufficient. Thereafter, Critchlow again spoke with Tiberi who congratulated him on his forthcoming promotion. Tiberi also told Critchlow that, because Hornyak had done so much to get Critchlow the promotion, he was going to make sure that Hornyak received half of the one hundred dollar payment. Subsequently, in April of 1973, Critchlow filled out the necessary papers for the promotion, made the one hundred dollar payment in cash to Tiberi, and received his operator-four card.

All the above facts came to light during a state police investigation in 1974 of suspected corrupt practices of PennDot employees. Although appellant thereafter had several discussions with Critchlow, wherein he allegedly noted his displeasure with Critchlow's informing the state police about the circumstances of his promotion, the jury declined to find that those conversations constituted tampering with a witness.

At trial, both Tiberi and Hornyak admitted that they had told Critchlow that operator number four was a "political" job, but they denied having suggested that Critchlow pay money for the job and denied having received money from Critchlow for the promotion.

I

Appellant first argues that the language of the anti-macing statute is vague and overbroad, and that it exerts a chilling effect on the exercise of certain of the rights guaranteed to appellant by the First and Fourteenth Amendments. In pertinent part the anti-macing statute reads as follows: "It shall be unlawful for any ... public ... employe ... to demand from any ... subordinate ... engaged or employed in the service of the Commonwealth ... any assessment or percentage of any money ... with the understanding, express or implied, that the same may be used or shall be used for political purposes: Provided, however, That nothing in this act contained shall be construed to prohibit voluntary contributions to any political committee or organization for legitimate political and campaign purposes to the extent such contributions are not prohibited by law." 25 P.S. §2374.

The gist of appellant's argument is that, in Pennsylvania, political patronage is a recognized and "time honored" method of staffing governmental positions. See, e.g., *A.F.S.C.M.E. v. Shapp*, 443 Pa. 527, 536 (1971). In that sense it is, according to appellant, presumably a

form of political expression and assembly, so that a law which seeks to prohibit or limit patronage reaches the freedoms protected by the First Amendment. While no criminal statute may stand, in the constitutional sense, if it is vague or overbroad, appellant also argues that the anti-macing statute may not exert a "chilling effect" on conduct which it does not literally proscribe, because that conduct is allegedly protected by the First Amendment. In the instant case, appellant's particular objection is that the word "demand" employed in the anti-macing statute is, especially as applied by the lower court herein, vague and overbroad, and deters people from engaging in conduct which the act does not prohibit. In particular, appellant argues that the act will deter government employees from merely soliciting money for political purposes, since solicitation might be erroneously interpreted as a demand. For a variety of reasons we disagree.

First, *A.F.S.C.M.E. v. Shapp*, supra, far from condoning political patronage, expressed an aversion to the practice. Therein the court reluctantly upheld the firing of PennDot employees for political purposes simply because it could find no constitutional or statutory proscription of that action.[5] In the instant case we labor under no such disability, as the "anti-macing" statute speaks directly to the kind of conduct employed by appellant. The anti-macing statute precludes political parties from using macing to line political coffers through an abuse of a public trust, and makes the attempt a criminal offense. Hence, *A.F.S.C.M.E. v. Shapp*, supra, is inapposite.

Second, in the only other case in which the validity of a judgment of sentence under the anti-macing statute was before us, *Commonwealth v. Zeger*, 200 Pa. Superior Ct. 92, 99 (1962), this court stated that the language of

---

5. Indeed, that case produced a 4-3 split in the Court, with two of the majority merely concurring in the result.

the anti-macing act, including the word "demand," was sufficiently definite to withstand constitutional muster. Recent decisions of the United States Supreme Court only fortify that conclusion.

In *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), the Supreme Court confronted a constitutional challenge to Oklahoma's civil service laws which were patterned after the federal Hatch Act.[6] In particular, appellants therein claimed that the act was overbroad, vague and exerted a "chilling effect" on appellant's private political activities which were beyond the pale of valid legislative prohibition. Pertinently, in that case it was conceded by all the parties that a state could properly and completely prohibit not only a *demand* by one state employee for money for political purposes from another state employee, the state could also prohibit the mere solicitation or receipt of money for political purposes. *Id.* at 610. With regard to the standard for measuring vagueness the Court stated that the question is whether "men of common intelligence must necessarily guess as to [the statute's] meaning. *Connally v. General Construction Co.*, 269 U.S. 385 (1926)."

> "Words inevitably contain germs of uncertainty ... 'there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.' " *Id.* at 608. See also *United States Civil Service Commission v. National Assoc. of Letter Carriers*, 413 U.S. 548 (1973).

In the instant case, the word "demand" is certainly specific enough to be understood by men of common intelligence. There can be no question that when

---

6.  5 U.S.C. §7324.

appellant made the promotion of Mr. Critchlow to operator number four, a promotion which Critchlow admittedly deserved, contingent upon his making a political payment, appellant violated the act by demanding money for political purposes. See *Commonwealth v. Wilson*, 30 Pa. Superior Ct. 26, 29-30 (1906).

For similar reasons, appellant's argument that the statute impermissibly circumscribes or "chills" the free exercise of his First Amendment rights also must fail.[7] Assuming arguendo that one in Mr. Tiberi's position may no longer freely solicit or receive money from his subordinates because it might appear that such money was demanded, that still does not render the act constitutionally invalid. The United States Supreme Court has long, and continuously, held that all manner of political fund raising *among* government employees may be prohibited. Beginning with *Ex Parte Curtis*, 106 U.S. 371 (1882), (which first judicially approved the long-standing prohibition forbidding federal employees "from giving or receiving money for political purposes from or to other employees of the government..."), through *United Public Workers v. Mitchell*, 330 U.S. 75 (1947), *Broadrick*, supra, and *Letter Carriers*, supra, the Supreme Court has held that political fund raising among government workers is a proper area for legislative concern and regulation. In the instant case, since our legislature could have constitutionally prohibited *all* fund raising efforts among government workers, the anti-macing statute which, by proscribing demands for money, has only a chilling effect on solicitation and receipt is surely constitutional. With regard to appellant's argument herein, a comment made during Congressional consideration of political activity in

---

7. Even though we have found that appellant's conduct went beyond mere solicitation or receipt of money for political purposes, he may still challenge the state's right to regulate that less offensive conduct in this appeal. See, e.g., *Gooding v. Wilson*, 405 U.S. 518 (1972); *Dombrowski v. Pfister*, 380 U.S. 479 (1965).

government employment is particularly apt: " 'One man's coercion is another man's persuasion. ... [I]n an employer/employee relationship, the extent of voluntaryism tends to be rather circumscribed.' " *Letter Carriers*, 413 U.S. at 566, n. 12, quoting from 3 Report of Commission on Political Activity of Government Personnel, Hearings, 759 (1968).

## II

Appellant's second argument challenges the sufficiency of the evidence to support his conviction for extortion under Section 318 of the former Penal Code of 1939. In particular appellant points to the fact that when Critchlow was promoted to operator number four, it was Hornyak who had the power and authority over hiring, firing and promotions on Critchlow's crew. Hence, appellant continues, if indeed anyone had the duty to promote Critchlow, that person was Hornyak and not appellant.[8] However, a breach of duty in the most literal sense of that word is not the *sine qua non* of a violation of Section 318; and, consequently, we do not find appellant's argument persuasive.

Under the Penal Code of 1939, extortion was defined as follows:

"Whoever, being a public officer, wilfully and fraudulently receives or takes any reward or fee to execute and do his duty and office, except such as is or shall be allowed by some act of Assembly, or receives or takes, by color of his office, any fee or reward whatever, not, or more than is, allowed by law, is guilty of extortion, a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or to undergo imprisonment not exceeding one (1) year, or both."

---

8. Hornyak was only charged with macing, and none of the evidence indicated that he ever asked for or received any money for political purposes.

Even a cursory reading of the statute demonstrates that appellant's argument that it was Hornyak's duty to promote Critchlow misses the mark. The act also prohibited the taking or receiving of a fee "by color of office;" and, as that language has been interpreted by our courts, appellant received the one hundred dollars by color of his office as a regional superintendent with PennDot.

In *Commonwealth v. Francis*, 201 Pa. Superior Ct. 313 (1963), this court pertinently noted: "We have held that the extraction of money or other things of value under a threat of using the power of one's office may constitute extortion. Such provision of the statute is the same as it is under the common law crime. *Commonwealth v. Burns*, 197 Pa. Superior Ct. 282, 178 A.2d 619; *Commonwealth v. Norris*, 87 Pa. Superior Ct. 61; *Commonwealth v. Wilson*, 30 Pa. Superior Ct. 26; *Commonwealth v. Brown*, 23 Pa. Superior Ct. 470." There is no doubt that the office which appellant held with PennDot was one to which the extortion statute spoke. See *Commonwealth v. Neff*, 407 Pa. 1, 17 (1962). Similarly, as both predecessor to Hornyak and Hornyak's superior, appellant doubtless had the power, or the appearance of the power, to retard or enjoin Critchlow's promotion. *Commonwealth v. Burns*, 197 Pa. Superior Ct. at 289 (1961); *Commonwealth v. Wilson*, 30 Pa. Superior Ct. at 26. Implicitly, appellant purported to be in a position to exercise the necessary influence to get Critchlow his promotion, and that was sufficient to establish the "color of office" element of the offense of extortion. *Commonwealth v. Burns*, supra.

## III

Appellant next argues that the court erred in denying his pre-trial motion for a severance of his trial from Mr. Hornyak's on the ground that the joinder resulted in the admission on the record of Hornyak's inculpatory statements which would not have been before

the jury had appellant been tried separately. In support of his contention appellant refers us to the American Bar Association Standards of Criminal Justice, Standards Relating to Joinder and Severance of Defendants, §2.3, which provides:

"Severance of Defendants

(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

(i) a joint trial at which the statement is not admitted into evidence;

(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the confessions will not prejudice the moving defendant; or

(iii) severance of the moving defendant."

Admittedly, the District Attorney in the instant case did not take any of the steps recommended by the *Standards;* however, we find that Section 2.3 does not apply to the instant case. Section 2.3 speaks only of references in a statement made by a co-defendant which would not be admissible had there been separate trials. That is not the case herein.

Our recent decision in *Commonwealth v. Hirsch,* 225 Pa. Superior Ct. 494 (1973) demonstrates, at some length, the fallacy in appellant's argument—when the Commonwealth can show a prima facie case of conspiracy, the out-of-court statements of one conspirator are admissible as evidence against another conspirator so long as the statements were made during the existence of the conspiracy and in furtherance thereof. There is no requirement that conspiracy must be alleged in the indictment; an adequate foundation is laid by the

Commonwealth when a fair preponderance of the evidence demonstrates the existence of the conspiracy to the satisfaction of the trial court. *Id.* at 497. See also 31A C.J.S., Evidence §362. Given the inculpatory statements of appellant, that Hornyak was instrumental in gaining Critchlow's promotion and was therefore entitled to one-half of the payoff, and the fact that Hornyak could, indeed, block the promotion had he so chosen because of his position as superintendent, we find no manifest abuse of discretion in the lower court's finding a prima facie case of conspiracy. *Id.* Since Hornyak's statements were admissible against appellant, the above-quoted Section 2.3 of the ABA Standards is inapposite. The court, therefore, was on firm ground when it denied appellant's motion for a severance under Pa.R.Crim.P. 219(c).[9]

## IV

Appellant's final argument is that the lower court abused its discretion in not granting appellant's motion for a separate trial on the witness tampering charge. We disagree.

Pa.R.Crim.P. 219(b) provides:

"Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transactions connected together or constituting parts of a common scheme or plan."[10]

In the instant case, the allegation of tampering with witnesses arose from conversations that appellant had with Critchlow and another PennDot employee regarding the State Police investigation of PennDot. Even though the conversations took place one year after the acts of macing and extortion were completed, they were

---

9. 19 P.S. (Appendix, 1975).

10. *Id.*

allegedly attempts to abort the State Police investigation of those charges and assure that appellant was not convicted. Hence, they were sufficiently related to the same transactions, macing and extortion, that we cannot say that the lower court abused its discretion in permitting their joinder for trial. In any event, tampering with witnesses is an admission by conduct. McCormick, Law of Evidence §273 (2d ed. 1972). Therefore, even had the tampering charge not been joined for trial with the macing and extortion charges, the Commonwealth still could have shown that appellant engaged in such conduct. For the above reasons we do not find that the lower court's refusal to grant appellant's motion for a severance constituted a "manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Peterson*, 453 Pa. 187, 193 (1973). See also *Commonwealth v. Patrick*, 416 Pa. 437 (1965).

Judgments of sentence are affirmed.