417 A.2d 1216

**COMMONWEALTH of Pennsylvania**

v.

**William CASPER, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Jan. 4, 1980.

David O'Hanesian, Pittsburgh, for appellant.

Robert F. Hawk, Assistant District Attorney, Butler, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

614

HOFFMAN, Judge:

Appellant contends that: 1) Insufficient evidence exists to support his conviction for "macing," (demanding money for political purposes from employees of the Commonwealth); 2) insufficient evidence exists to support his convictions for conspiracy and criminal solicitation to "mace"; 3) the verdict of guilty of extortion is inconsistent with the verdicts of not guilty of conspiracy and solicitation to extort charged in the same indictment; and 4) the trial court erred in failing to grant his motion for severance of the indictments. We disagree and, accordingly, affirm.

On May 16, 1974, the Commonwealth filed against appellant a criminal complaint, Indictment No. 60, charging that, while Chairman of the Butler County Democratic Party in 1973, appellant had conspired with superintendents of the Pennsylvania Department of Transportation, Richard V. Boyd, Alan McGarvey, Raymond Doutt, Samuel Zurzalo, Jerome Geibel and Mark Rhodes, for the purpose of unlawfully demanding money from employees of the Commonwealth for political purposes. The complaint charged conspiracy, solicitation and "macing." Later in 1974, a Special Investigating Grand Jury returned two more indictments. Indictment No. 170 alleged that appellant and the co-conspirators named in Indictment No. 60 had unlawfully demanded money for political purposes from employees of the Commonwealth. Indictment No. 173 charged that from 1971 to 1973, appellant and co-conspirators had conspired to commit extortion and bribery against lessors of snow removal equipment to the Butler County Division of the Pennsylvania Department of Transportation and that appellant and another named individual had solicited individuals to commit bribery and extortion.

Before trial, the Commonwealth moved to consolidate the indictments for trial. Appellant moved to sever Indictment No. 173 from trial of the other indictments and for change of venue. The trial court permitted consolidation of the indictments and denied appellant's motions. On March 6, 1975, a jury convicted appellant of conspiracy, solicitation

and three counts of "macing" charged in Indictment No. 60, of four counts of "macing" charged in Indictment No. 170 and of three counts of extortion charged in Indictment No. 173. After denying post-verdict motions, the trial court sentenced appellant to a term of imprisonment of 1–2 years and fined him $11,500. On appeal, this Court reversed the judgment of sentence, holding that the trial court's failure to grant change of venue denied appellant a fair trial. *See Commonwealth v. Casper*, 249 Pa.Super. 21, 375 A.2d 737 (1977). The Supreme Court, holding that a change of venue was not necessary, reversed the order of the Superior Court and remanded for consideration of appellant's other assignments of error. *See Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978). Appellant now raises those assignments of error.

Appellant first contends that the evidence is insufficient to sustain his convictions on seven counts of "macing." The Commonwealth's witnesses established that, in 1973, appellant held a meeting with superintendents of the Pennsylvania Department of Transportation, in which he instructed them to collect money from Department employees, raising $120 from each equipment operator and $60 from each laborer, and from lessors of snow removal equipment, collecting from each of them $100 for each piece of equipment leased. Appellant directed that employees who failed to contribute should be transferred from the equipment on which they worked or to another area and given less overtime, and that lessors who failed to make contributions should have their contracts rejected.

Noel Rhodes testified that McGarvey asked him to contribute $120. Rhodes complained that he could afford only half of that amount and McGarvey replied that "its not up to me to accept half" and recommended that Rhodes speak with Boyd. When Rhodes failed to call Boyd, appellant phoned him and said that "it would be more beneficial to you to make a right decision."

Gary Doutt testified that Boyd called him into his office and straight out asked, "Are you going to donate?" Doutt

answered that he had already contributed to the Democratic Party all he could afford. Sometime later, appellant called Doutt and stated that Boyd had told him that "you are not going to donate." Doutt answered appellant as he had Boyd. Appellant stated that Doutt "should know how things are up there" and "better try harder."

Glenwood Marburger testified that Mark Rhodes told him that the Democratic Party needed money and asked for a contribution. Marburger gave $20. Subsequently, Raymond Doutt also solicited a contribution, announcing that "All operators was [sic] supposed to give one hundred twenty dollars to the . . . Democratic Committee" and laborers were supposed to give $60. He also warned that "If you didn't give, you would be taken off your equipment." Marburger did not donate the requested amount. Mark Rhodes again asked Marburger for a contribution but Marburger again refused. Eventually, Marburger was taken off his equipment, that is, shifted to less desirable work.

Ronald Lumley testified that Boyd twice asked him to contribute money. On the second occasion, Boyd informed him that the amount desired was $120. Lumley did not give the full amount. Later, he was dropped from an equipment list. When he asked Boyd why he was not on the list, Boyd replied, "You know why." Lumley asked whether he would be returned to the list if he paid the money. Boyd called appellant and later reported to Lumley that "it would be all right to put [you] back on the high lift if you bring the money." Lumley paid the balance the next day and immediately was placed on the equipment list.

David Aggas testified that McGarvey asked him to contribute $120 to the Democratic Party. McGarvey warned that if he didn't pay, he could be taken off his equipment. Aggas paid the money but complained about the amount. McGarvey "told me that it wasn't his idea, that he didn't like it either, but it was his job to collect it . . .. He said alot [sic] of pressure was on him to collect this money."

Howard Nicklas, Jr. testified that Boyd spoke to him and said that he would give Nicklas a piece of equipment on

which to work and that he would be taking a contribution for the Democratic Party. Boyd asked for $120 and Nicklas immediately agreed to pay it. When it turned out that another employee was assigned to the machine, Boyd assured Nicklas that "If you go along with our donation, why, you can run a roller." Later in the fall of 1973, McGarvey asked Nicklas if he was going to contribute the $120. Nicklas explained that, because of unexpectedly high hospital bills, he could not afford the donation. Subsequently, Nicklas learned that he was not to receive certain overtime work available to most of the other employees and his name did not appear on the winter equipment list. Nicklas asked Boyd why he wasn't on the list and Boyd stated that the reason was that he had not paid the donation. Nicklas paid $120 and soon afterward was assigned to a piece of equipment.

William Stewart testified that, in the summer of 1973, Boyd asked him for a contribution of $120 to the Democratic Party. "I asked him what would happen if the person refused. And, then, he appeared to have a list of names on his desk that he was checking names off as he and I talked. He said, 'Well, it isn't in my hands no more.'"

■ The jury convicted appellant of "macing" with respect to each of these employees. The Act of April 6, 1939, P.L. 16, § 1, 25 P.S. § 2374 (1963) provides:

> It shall be unlawful for any . . . public . . . employe . . . to demand from any . . . subordinate . . . engaged or employed in the service of the Commonwealth . . . any assessment or percentage of any money . . . with the understanding, express or implied, that the same may be used or shall be used for political purposes . . .

The evidence is sufficient to support the verdict. In each instance, appellant or one of the coconspirators approached the employees and asked for a contribution in such a way that the money received cannot be regarded as a voluntary donation. Each employee was requested to donate a particular sum, the request was often accompanied by a warning

that failure to pay would cause punishment and, in many instances, the employee paid the money only after suffering some form of retribution. Each employee could reasonably have believed that a "demand" for money for the Democratic Party had been made. *See Commonwealth v. Tiberi*, 239 Pa.Super. 152, 361 A.2d 318 (1976) (by implication).

Appellant further argues that the evidence is insufficient to support the verdict of guilty of conspiracy and criminal solicitation to "mace." This argument is without merit. Appellant called a meeting of superintendents of the Department of Transportation at which he directed that they solicit contributions and back their "requests" with sanctions against employees and improper refusals to award contracts to lessors of equipment. This evidence clearly support the verdicts. *See Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979) (conspiracy); *Commonwealth v. Helser*, 261 Pa.Super. 378, 396 A.2d 447 (1978) (solicitation).

Appellant contends that the verdict of guilty of extortion, as charged in Indictment No. 173, must be set aside as inconsistent with the verdict of not guilty of conspiracy and solicitation to extort charged in the same indictment. Even if the verdicts are inconsistent, appellant is not thereby entitled to relief because a jury may return inconsistent verdicts. *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Rosetta*, 266 Pa.Super. 543, 405 A.2d 952 (1979).

Finally, appellant asserts that the court's refusal to grant his motion for severance of the indictments caused him prejudice. According to appellant, the jurors heard evidence of his 1971 and 1972 conduct which was not admissible to prove acts allegedly committed in 1973, were unable to understand the complicated charges mixed together and probably considered evidence of each offense in finding guilt of other, separate charges.

In *Commonwealth v. Rose*, 265 Pa.Super. 159, 176, 401 A.2d 1148, 1157 (1979), this Court stated:

> Three types of prejudice may occur if separate offenses are joined.

"These are: (1) defendant may become embarrassed or confounded in his defense; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crimes charged; or (3) the jury may cumulate evidence of the various crimes charged and find guilt, when, if considered separately, it would not so find."

(citation omitted). We see no such prejudice here. First, appellant does not contend that consolidation of the indictments hindered him in presenting his defense. Second, the evidence was not complicated and the jury would have been able to understand that certain evidence applied only to certain of the crimes charged. That the jurors acquitted appellant of many of the counts indicates that they properly applied the evidence and understood the court's definitions of the offenses. Finally, the jurors could not have improperly considered and cumulated evidence of appellant's alleged misconduct in 1971 and 1972 in determining guilt for conduct allegedly committed in 1973. As evidence of appellant's intent in 1973 to conspire to raise money unlawfully, from Department employees and equipment lessors alike, the Commonwealth could introduce evidence of conspiracy in 1971 and 1972. The later conspiracy could have grown out of the earlier one. If so, the earlier intent to conspire would be probative of later, continuing intent to commit unlawful acts of the same and similar nature. *See Commonwealth v. Weitkamp*, 255 Pa.Super. 305, 321, 386 A.2d 1014, 1022 (1978).* Accordingly, the trial court did not abuse its discretion in denying appellant's motion for severance of Indictment No. 173 from the other indictments. *See Common-*

* Appellant argues that the jury would have been confused because the trial court failed to instruct the jurors to keep separate the evidence of each count charged. We need not consider the propriety of the trial court's charge. The trial court asked trial counsel if he was satisfied with the charge and requested suggestions for supplementing it. Trial counsel stated that the charge was satisfactory and offered no modifications. Appellant may not now complain that the charge failed to convey an essential point. *E. g., Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

620

wealth v. Rose, supra ; *Commonwealth v. Fiorini*, 257 Pa.Super. 185, 390 A.2d 774 (1978); *Commonwealth v. Irons*, 230 Pa.Super. 56, 326 A.2d 488 (1974).

Judgment of sentence affirmed.