Commonwealth *v.* Garland, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Richard Farber, Leonard Sosnov,* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Benjamin H. Levintow, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., April 22, 1975:

The appellant, Robert Garland, was found guilty after a jury trial of two counts of armed robbery and one count of criminal conspiracy. After his motions in arrest of judgment or for a new trial were denied, appellant was sentenced to three concurrent terms of two to ten years in prison. Thereafter, appellant perfected the instant appeal in which he alleges: (1) that the lower court erred in not suppressing his in-court identification by one of the victims; and (2) that the lower court erred in not declaring a mistrial because of allegedly prejudicial remarks made by the prosecutor in his summation. We disagree with appellant's arguments and will affirm.

At approximately 10:30 A.M. on July 24, 1973, two men entered Joe Ziolkowski's auto repair shop and be-

gan talking with his son, Henry. Joe looked up and saw the men in the brightly-lit shop and returned his attention to repairing a radiator. Shortly thereafter one of the men, later identified as the appellant herein, approached Joe and, grabbing a ball peen hammer, angrily and profanely ordered him into another room with his son. Joe later described this confrontation as "eye to eye . . . close enough to spit in his face. . . ." After the two men had relieved the Ziolkowskis of their money and wallets, they inexpertly bound them together with a length of rope and ran out of the shop. The Ziolkowskis quickly extricated themselves and went to the police station to report the robbery.

Because of the well-illuminated shop, and his proximity to one of the assailants, Joe Ziolkowski was able to provide the following description which admittedly fits the appellant: "He had a crushed hat on, a tan undershirt with a heavy strap on it, an Afro hairdo, a thin mustache." Joe Ziolkowski also stated that the robber was a tall, thin black man with a medium-dark complexion. The police then showed Joe a three-inch stack of photographs from which he readily selected the appellant's picture.[1] However, Henry Ziolkowski, the son, was equivocal and could not conclusively state that any of the pictures matched one of the robbers.

Prior to Garland's preliminary hearing, his defense counsel requested that a line-up be conducted to assure that a tainted identification would not result from the one-on-one confrontation at the preliminary hearing.

---

1. This stack of photographs was preserved for the examination and use of appellant's attorney during the proceedings below. It is not suggested that this array of photographs unduly suggested appellant's identification. Furthermore, since the appellant was not a "suspect in custody," *United States v. Ash*, 413 U. S. 300 (1973); *Commonwealth v. Whiting*, 439 Pa. 205, cert. denied, 400 U. S. 919 (1970); and *Commonwealth v. Jackson*, 227 Pa. Superior Ct. 1 (1974), are inapposite.

Upon learning of Joe Ziolkowski's full and accurate description of Garland and his selection of Garland's photo from the stack at the police station, however, the magistrate denied the request. Both Joseph and Henry Ziolkowski then identified Robert Garland as being one of the assailants.

Prior to trial, counsel moved to suppress any in-court identification of the appellant by the victims because of the unnecessarily suggestive confrontation at the preliminary hearing. The court found that the confrontation was indeed unnecessarily suggestive and ruled that Henry Ziolkowski, because of his previous inability to identify Garland, would not be permitted to offer identification testimony at trial. The hearing court determined, however, that because of Joe Ziolkowski's identifications of appellant before he saw him at the preliminary hearing, the Commonwealth had demonstrated a sufficient independent basis for his identification testimony. Thus, it is Joe Ziolkowski's identification testimony at the trial which appellant now challenges.

There can be no valid complaint concerning Joe Ziolkowski's identification of Garland prior to the preliminary hearing or the procedure used by the police in obtaining it. Even if we assume arguendo that the confrontation at the preliminary hearing was unnecessarily suggestive,[2] the victim's "in-court identification testi-

---

2. See *United States v. Smith*, 473 F.2d 1148, 1150 (D.C. Cir. 1972) where the Circuit Court stated: "A serious problem arises if the suspect's right to a preliminary hearing on the validity of pre-trial detention cannot be exercised without exposure to a potentially suggestive one-to-one confrontation with the witness. If the Government's case turns upon the testimony of an identification witness, and defense counsel forecasts irreparable suggestivity if the witness appears at the preliminary hearing, his remedy lies in a motion for a lineup order, to assure that the identification witness will first view the suspect at a lineup, rather than in a magistrate's hearing room. The magistrate or judge should grant this motion, unless cause to the con-

mony of [the accused] was not constitutionally precluded as trial evidence if the Commonwealth established this identification was free from taint of the initial illegality." *Commonwealth v. Mackey*, 447 Pa. 32, 37 (1972). See also *United States v. Wade*, 388 U.S. 218 (1967) ; *Commonwealth v. Rankin*, 441 Pa. 401 (1971). In the instant case, Joseph Ziolkowski had accurately described and identified Garland prior to the preliminary hearing. Furthermore, his testimony indicated that the lighting in the shop was good, and that he had an ample opportunity to observe Garland. And, finally, defense counsel's cross-examination of Joseph, both at the preliminary hearing and at trial, failed to shake Joseph's identification testimony. Under these circumstances, the lower court properly exercised its discretion in finding that Joseph's identification testimony was not tainted by the confrontation with Garland at the preliminary hearing.

Appellant next charges that the lower court erred in not granting his timely motion for a mistrial when the assistant district attorney made the following remark:

"Let's look first at the opportunity to observe. Number one, we have the lighting conditions in the shop. Mr. Ziolkowski told you that he has to have a well lit shop, it's necessary for him to do this work, to check for the anti-freeze leaks. Number two, we have the fact that Mr. Ziolkowski actually saw the defendant and the man identified to you as Richard Garland—Defense counsel very cleverly, I might add, kept referring to defendant as Richard Garland and one person and the other person, but be conscious of the names. We have a situation—."

---

trary is shown, since a lineup conducted by police, with the attendance of defense counsel, assures or at best promotes the reliability of the identification and is therefore in the interest of justice."

The appellant now complains about this remark because during the course of the trial Henry Ziolkowski was able to identify Robert Garland's co-conspirator, without objection, as Richard Garland, one of Henry's former junior high school classmates. However, for reasons not apparent in the record, and despite the allegation of conspiracy, Richard and Robert Garland were not tried together. Furthermore, no evidence other than the surnames was offered to show the relationship between Richard and Robert Garland. Thus, appellant's argument is that the assistant district attorney called upon the jury to infer a blood relationship between the Garlands, a fact not specifically proved, when he advised them to "be conscious of the names." In support of his argument that a new trial should be granted, appellant refers us to the American Bar Association: Standards Relating to Prosecution Function and the Defense Function § 5.8 (1971), which provides:

"The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw."

However, especially in a conspiracy case, we do not think that advising the jury to be conscious of the names either misstated the evidence or induced the jury to draw a misleading inference. In any event, the mere fact that the Commonwealth attempts to induce the jury to draw an improper inference does not, standing alone, require that a new trial be granted. As our Supreme Court stated in *Commonwealth v. McNeal*, 456 Pa. 394, 400 (1974):

"We have consistently ruled that comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict."

In the instant case, the assistant district attorney only reminded the jury to remember a fact already proved without objection, the identity of the surnames of the appellant and his alleged co-conspirator. It was hardly the kind of comment likely to promote a fixed bias or hostility toward the defendant so that the jury "could not weigh the evidence objectively." The fact that the prosecutor's motive for so doing may not have been the purest does not require that a new trial be granted.

Judgment of sentence is affirmed.

SPAETH, J., concurs in the result.