369 A.2d 794
**COMMONWEALTH of Pennsylvania**

v.

**Warren SEXTON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1976.

Decided Feb. 18, 1977.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence entered by the Court of Common Pleas of Philadelphia County, Criminal Division. Appellant was convicted, after a non-jury trial, of robbery, simple assault, possession of instruments of crime, and conspiracy.

The Commonwealth's evidence showed that on December 21, 1974, appellant, accompanied by a friend, entered Lucky's Food Market at 17th and Federal Streets in Philadelphia. After walking around the store a short time he approached the cashier, displayed a gun, and told her to open the register. She complied and gave him the money inside. The owner of the store, David Weinstein, observed the incident and chased appellant out the door. Appellant fired a shot at Weinstein as he fled. Weinstein's positive in-court identification was the only evidence connecting appellant with the crime; neither the cashier nor the other store employee who testified at trial could identify him.

Appellant, who was sixteen years old at the time of the robbery, was arrested December 23, 1974 as the result of information received from an eyewitness who knew him. (This witness never testified.) At a certification hearing held January 20, 1975, it was determined that he would be tried as an adult. It was in the course of that hearing that Weinstein first identified appellant. Prior to the hearing, appellant filed a motion requesting the court to order a lineup. This was denied at the beginning of the hearing, before Mr. Weinstein entered the

courtroom. It was stipulated that none of the witnesses had seen appellant or his picture since the robbery.

Appellant subsequently moved to suppress the preliminary hearing identification and the in-court identification, alleging that the pretrial identification was unnecessarily suggestive and tainted the in-court identification. The claim of suggestiveness was rejected and the motion denied as to the pretrial identification, with the result that the question of its effect on the in-court identification was not reached.

Appellant maintains that his motion for a lineup was improperly denied, and that the record should be remanded for a determination as to whether the certification hearing identification tainted the in-court identification.[1] *United States v. Wade*, 388 U.S. 218, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Richman*, 458 Pa. 167, 175–76, 320 A.2d 351 (1974). We agree.

The court below stated in its opinion denying the post-trial motions:

"It is obvious that identifications made by a witness of the defendant sitting at counsel table are always suggestive. It is the strong belief of this Court that the better practice would be to hold a prehearing lineup, if requested, 'to assure that the identification witness will first view the suspect at a lineup rather than in the magistrate's hearing room.' *United States v. Smith*, [154 U.S.App.D.C. 111,] 473 F.2d 1148, 1150 (D.C.Cir. 1972) cited in *Commonwealth v. Garland*, [234 Pa.Super. 241,] 339 A.2d 109, 111 (Pa.Super. 1975). In fact, such a grant of lineup might have been best in this case. However, it is clearly the present law of this Commonwealth that there is no constitutional right to a pretrial lineup. *Commonwealth v. Evans*, [460 Pa. 313, 333 A.2d 743] (1975).

1. Appellant's other assignments of error are non-meritorious.

It is therefore within the discretion of the judge at the . . . hearing to deny a motion for lineup, and we cannot find that there was an abuse of this discretion."

We think, under all the circumstances of this case, that there was an abuse of discretion. Appellant had a right, *upon timely request,* to have the identification evidence against him tested by a procedure less suggestive than a one-on-one confrontation in the course of a pretrial hearing.[2] As the court stated in *United States ex rel. Riffert v. Rundle,* 464 F.2d 1348, 1350 (1972):

"The inherent suggestiveness of any one-to-one identification may very well be increased when a witness is asked to positively identify a defendant in the context of a judicial proceeding already instituted against him."

The same point was made (by a prosecutor in the course of a panel discussion conducted by the National Legal Aid and Defender Association in Philadelphia, *The Role of the Defense Lawyer at a Lineup in Light of the Wade, Gilbert, and Stovall Decisions,* 4 Crim.L.Bull. 273, 282–84 (1968):

"All right, here is a situation, the first courtroom situation, in which the victim comes face to face with the alleged culprit in what I submit is the most suggestive situation of all. Clearly, if the witness didn't have a good look at that defendant at the time of the crime, that witness has a very good look at him at the time of the arraignment. The lighting is excellent; the procedures are leisurely; he or she is standing maybe 18 inches away. If there ever was a circumstance in which the witness gains the impression that at least someone around here thinks this is the man who committed a crime on me, that is it. . . ."

2. The Commonwealth does not contend that the lineup motion was untimely.

Another panelist, also a prosecutor, expressed a similar opinion:

"[T]he most suggestive and harmful of all confrontations are the confrontations made at arraignment, preliminary hearing and the trial itself, where the defendant is isolated, surrounded by policemen, and there shown to the complaining witness. If it is decided that having a lawyer present at those times saves those out-of-court identifications and allows you to introduce an in-court identification based upon it, you will have substituted for present lineup procedures which may be unfair, a confrontation procedure at preliminary hearing or arraignment which we know to be unfair and which will invariably be unfair." *Id.* at 290.

The manner in which the hearing in the instant case was conducted did not significantly differ from the typical hearing described above. Weinstein waited outside the hearing room until the case was called. When he entered the room, appellant (the only black male in the room) was standing at the bar of the court with his counsel. It was in this suggestive setting that the initial identification was made. Weinstein's testimony that he recognized appellant upon entering the room does not change the fact that the confrontation was suggestive. As the court stated in *Commonwealth v. Ehly*, 457 Pa. 225, 235, 319 A.2d 167, 172 (1974):

"The Commonwealth emphasizes Mrs. Manzo's testimony that she was able to identify appellant as soon as she saw him in the lineup, in arguing that her testimony about the lineup was properly admitted. However, even if we were to agree, without deciding, that Mrs. Manzo's identification powers needed no 'coaching' from the police, it is the suggestiveness of the lineup procedures, not whether the witness needed such suggesting, which determines whether testimony concerning the lineup should be admitted."

■ Applying the above criterion to the hearing in the case at bar, we conclude that the court should have granted appellant's motion to suppress any evidence that Mr. Weinstein identified him at the certification hearing. The suppression court's error in not doing so, however, did not prejudice appellant since Weinstein's testimony on direct examination at trial included no reference to this identification; appellant brought it out on cross-examination in an effort to weaken the effect of the in-court identification.

■ With respect to the in-court identification, the record is insufficient for us to determine whether it was tainted by appellant's one-on-one confrontation with Weinstein at the certification hearing. As the Supreme Court stated in *Wade*:

"[The determination] requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendants' actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." 388 U.S. at 241, 87 S.Ct. at 1940.

Weinstein's testimony at trial concerning the basis of his identification was limited and ambivalent.[3] Therefore, we must remand for a hearing to determine whether Weinstein's ability to identify appellant had a basis sufficiently independent of the confrontation at the certification hearing to warrant its admission at trial.

3. Weinstein asserted that he would never forget his assailant's face, but could not state whether the assailant had a mustache at the time of the robbery. Furthermore, while the description Weinstein gave the police after the robbery was read into the record, appellant's actual description, except for his height and age, is absent therefrom, so that we cannot determine "the existence of any discrepancy between any [pre-confrontation] description and the defendant's actual description." See *Wade, supra.*

It is so ordered.

HOFFMAN, J., joins in this opinion.

VAN der VOORT, J., files a concurring and dissenting opinion in which SPAETH, J., joins.

PRICE, J., files a dissenting opinion in which WATKINS, President Judge, and JACOBS, J., join.

PRICE, Judge, dissenting:

On December 21, 1974, appellant, at that time sixteen years old, and another youth entered Lucky's Food Market in Philadelphia. They wandered around the store looking at items on the shelves, arousing the suspicions of the owner of the store, David Weinstein. Appellant approached one of the cashiers, sat on the counter in front of her, produced a silver pistol, and demanded the money in the cash register. He removed $1,431.00 from the register and began to flee. At this time, Mr. Weinstein who had observed the entire 3–4 minute episode, gave chase. Appellant fired one shot and Weinstein ceased his pursuit.[1] The police arrived shortly thereafter and were given descriptions by Weinstein and other store employees. Weinstein described appellant as "light complected, 19, five feet ten, 165, black Jeff cap, black shoes, black pants, full length dark green raincoat, and green sunglasses." [NT 78] An eyewitness to the robbery knew appellant by name, and on this basis appellant was arrested two days later.

On January 20, 1975, a certification hearing was held. Appellant's counsel moved to have a line-up prior to the hearing. It was stipulated that none of the witnesses had known or seen appellant before the incident and none had seen him since the incident. The court denied the motion. Mr. Weinstein identified appellant as the

---

1. Mr. Weinstein was wounded in the finger. It appears, however, that he was not struck by a bullet. The record suggests that he was hit by a ricocheting piece of cement. At any rate, there is some cause to believe that the shot fired by appellant caused the wound.

perpetrator of the crime and appellant was certified to be tried as an adult.

Appellant filed a motion to suppress all of the identification testimony due to the suggestive confrontation at the certification hearing. At the suppression hearing, Weinstein testified that it was appellant's suspicious behavior which first attracted his attention. He had a good opportunity to observe appellant and he had no trouble identifying him. The lower court denied the motion to suppress.

On August 18 and 19, 1975, appellant was tried before a judge sitting without a jury and found guilty of robbery, simple assault, possession of instruments of crime, and conspiracy. On appeal, appellant contends that the denial of a request for a line-up was an abuse of discretion, rendering evidence of the certification hearing identification inadmissible. Furthermore, according to appellant, this case must be remanded for a hearing to determine whether the certification hearing confrontation tainted the in-court identification. *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Richman,* 458 Pa. 167, 320 A. 2d 351 (1974). The majority basically agrees with appellant. I believe that the majority opinion is ill-considered, and, therefore, I dissent.

A pre-trial line-up, where the witness has not seen the accused since the time of the alleged crime, is undoubtedly an excellent method of testing a witness' ability to identify the perpetrator. It is certainly injudicious of a court to deny a request for a line-up without a very good reason for doing so. *See Commonwealth v. Garland,* 234 Pa.Super. 241, 339 A.2d 109 (1975). It is irresponsible of the Commonwealth to oppose such a request. However, I have concluded that there is no logical remedy for an abuse of discretion in denying a line-up. Indeed, in this case, the majority does not remedy the abuse of discretion in denying the line-up. A close reading of the

majority opinion will reveal that it is solely the supposedly suggestive certification hearing confrontation which necessitates the majority's decision to remand.

The majority first holds that there was an abuse of discretion in denying the lineup. Second, the court concludes that the certification hearing confrontation was unduly suggestive. Finally, if the in-court identification is determined to have been independent of the suggestive confrontation, then admission of the in-court identification was not error.

Assume, *arguendo*, that the majority's second premise is not true. Assume that the certification hearing confrontation was not unduly suggestive. Then, according to the majority's analysis, the identification testimony would be admissible. An abuse of discretion in denying a request for a line-up, under such circumstances, would be unremediable.[2] The lack of a line-up identification can weaken a witness' testimony, but is not an independent ground for relief. Therefore, the majority's discussion of appellant's "right" to a lineup [3] is, at most, an admonishment of the lower court, and has no substantive bearing on the resolution of this case.

The only inquiry of moment is whether the certification hearing confrontation was unduly suggestive, and, if so, whether it tainted the in-court identification. Here,

2. The majority's opinion could be interpreted to mean that the denial of a line-up is only a remediable abuse of discretion when it precedes an unduly suggestive confrontation. However, once again, the true focus of such an analysis is on the suggestiveness of the confrontation.

3. In *Commonwealth v. Evans*, 460 Pa. 313, 333 A.2d 743 (1975), the Supreme Court of Pennsylvania held that there is no constitutional right to a line-up. The majority attempts to distinguish *Evans* on the ground that in this case, unlike in *Evans*, there was a timely request for a line-up. However, if the Supreme Court had intended its decision in *Evans* to turn upon whether a request had been made, a waiver analysis would have been appropriate. Instead, the court held in clear and unmistakable terms that there is no right to a line-up. Therefore, the grant of a pretrial line-up is not a matter of right, but is totally within the discretion of the court that hears the motion.

the record demonstrates that Mr. Weinstein's in-court identification proceeded from an independent basis. Therefore, even if the certification hearing confrontation was unduly suggestive, it was not error to admit Mr. Weinstein's in-court identification. *See Commonwealth v. Mackey,* 447 Pa. 32, 288 A.2d 778 (1972).

Each time that Mr. Weinstein identified appellant, his testimony was certain and unshakeable. At the certification hearing, he identified appellant without hesitation. At the suppression hearing, he was again positive in his identification. His identification testimony at trial was as follows:

[By the district attorney:]

"Q.  Is the man that you've named as Warren Sexton,
—
A.  Yes.
Q.  —is he in the courtroom today?
A.  Yes.
Q.  Would you please point him out.
A.  He's sitting right there, in the gray shirt."  [NT 45]

"Q.  And is Warren Sexton in the courtroom?
A.  Yes.  He's sitting right there in the gray shirt.
Q.  Would you please point him out?
A.  Sitting right there."  [NT 46]

"Q.  Who shot at you?
A.  Warren Sexton.
Q.  And is he in the courtroom today?
A.  Yes.
Q.  Would you please point him out.
A.  Sitting right there.  Gray shirt.
Q.  How far were you from him—
A.  I wasn't—
Q.  —at the time you were shot?

A. I wasn't too far. I would say about five feet, six feet maybe. I don't know. So close. Because I almost hit him." [NT 54]

"Q. —what is it that makes you conclude that this defendant is the person who was in your store and did what you have described? What makes you conclude that?

A. I can't forget somebody who shoots on you, face. Never forget in my life.

Q. Well, what is there about it that makes you say that about him? What do you recognize about him?

A. It's him. And then—if somebody take a shot at you, you look him straight in face, you see, what it is. You never forget the face until you die." [NT 71]

I cannot agree with the majority's conclusion that "Weinstein's testimony at trial concerning the basis of his identification was limited and ambivalent. . . ." [At 797]. I believe that the record demonstrates that Weinstein's identification testimony proceeded from a basis independent of the certification hearing confrontation. Therefore, it was properly admitted.

I would affirm the judgment of sentence of the lower court.

WATKINS, President Judge, and JACOBS, J., join this dissenting opinion.

VAN der VOORT, Judge, concurring and dissenting:

While I concur in the result reached by Judge CERCONE, I do not agree that a line-up was improperly denied and therefore dissent to that holding.

SPAETH, J., joins in this concurring and dissenting opinion.