404 A.2d 1330

**COMMONWEALTH of Pennsylvania**

v.

**Norman GUESS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 29, 1978.

Decided May 25, 1979.

360

Donald G. Joel, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Div., Philadelphia, for Com., appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

Pursuant to a jury trial concluded on November 8, 1976, appellant was convicted of rape,[1] criminal conspiracy,[2] invol-

1.  18 Pa.C.S. § 3121.

2.  18 Pa.C.S. § 903.

untary deviate sexual intercourse,[3] and two counts each of kidnapping[4] and robbery.[5] Post-verdict motions were denied, and appellant was sentenced to several concurrent and consecutive prison sentences which totaled not less than 12½ nor more than 25 years. Appellant now asserts numerous instances of error which we will address seriatim.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978), the following facts were adduced at trial. At approximately 9 p. m. on June 27, 1975, Florence Feld, age 57, and her husband Samuel Feld, age 66, had just parked their car in the garage of their apartment building in Montgomery Township. Before they reached the garage stairway, they were surrounded by appellant, Michael Guess (appellant's brother), and Joseph Toy (appellant's co-defendant). Toy and Michael Guess held guns to the temples of Samuel Feld, while appellant trained a gun on Mrs. Feld. After taking Mr. Feld's money and watch, and Mrs. Feld's pocketbook, appellant and his companions forced the couple into the back seat of their car. Toy and Michael Guess then drove the Feld's automobile out of the garage while appellant followed in a backup car. The two vehicles proceeded in tandem to the Cedar Hill Country Club, where Mr. Feld was removed from the vehicle. At Toy's order, Mr. Feld was about to be placed in the trunk of the car when his wife pleaded with the abductors and informed them that her husband suffered from a heart condition and emphysema. In apparent response to this request, the three miscreants deigned only to force Mr. Feld to lie flat on the front seat of his car with his head down. Toy then took Mrs. Feld into the rear seat and at gun point compelled her to perform fellatio on him. In the interim, Mr. Feld's labored breathing indicated a serious deterioration in his physical condition. Noting this, Mrs. Feld advised

3. 18 Pa.C.S. § 3123.

4. 18 Pa.C.S. § 2901.

5. 18 Pa.C.S. § 3701.

her assailants that she would cooperate with them on the condition that they release her husband.

Accepting this bargain, the group drove back into Philadelphia and allowed Mr. Feld to leave the car. After he was released and both cars were in motion, Michael Guess entered the back seat and penetrated Mrs. Feld's vagina with his penis. After several stops during which conferences were held, Toy similarly forced himself on Mrs. Feld. Finally, appellant, who had continued to drive the backup vehicle, also entered the rear seat and duplicated the actions of his companions. At the conclusion of this episode, Mrs. Feld was permitted to escape from the car. She immediately hailed a cab, returned home, and notified the police. Appellant was apprehended on October 16, 1975, after being implicated by Joseph Toy.[6]

Appellant's first argument is premised on the following incident. During the District Attorney's closing address to the jury, he related the ensuing personal experience:

"You know you sit here and think of [how?] I would have acted differently, why did she do that, I would have fought and screamed. Let me give you an example of it.

I had an infantry platoon in Viet Nam, and the platoon of men was scouts, and they walked German Shepherds in front of other platoons to find booby traps and ambushes, they were out in front, they were the first to get it physically. I had two men in my platoon, one who was a college graduate who was bigger than I am, who was a big braggart, he was going to be cool and he was going to win his medals and he was going to be the hero; he thought he could run the platoon better than I could. I had another kid in my platoon who was a poor kid from North Carolina who was too dumb when he took the Army

---

**6.** Joseph Toy and appellant were tried jointly, with the former being found guilty of the same crimes as was appellant. On appeal, this court affirmed Toy's conviction per curiam. *Commonwealth v. Toy,* 257 Pa.Super. 618, 390 A.2d 298 (1978), *petition for allocatur denied,* November 27, 1978. The sole issue raised by both Toy and appellant concerns the prosecutor's allegedly improper placement of his character into issue during the course of the closing argument.

test first time around, so when they needed infantrymen they passed him sure enough so he could get in, whether he wanted to or not he was drafted. He was scared and he told me.

I went out with him one day, he said you're crazy, what are you doing out with me, you don't have to be out here. And he suppressed his fears.

Well, ladies and gentlemen, I went out with the big tough braggart who was going to win all the medals, he was so scared the dog wouldn't even function, the dog even got the fear of the handler; the only way I could get the dog to go out on patrol was take him, and I tripped a booby trap and through the grace of God I'm here. But that was the big tough guy who was going to be a hero. The small guy's lieutenant was wounded, he ended up taking over the platoon leading them out of the jungle to safety; he's the one with the medal today the poor quiet scared kid, not the big braggart who was sure he was a hero. You don't know what you would do in a situation, none of us do." N.T. 764–66.

■ At the conclusion of the closing argument, counsel for both appellant and appellant's co-defendant objected to these remarks and moved for a mistrial.[7] That motion was denied, and appellant now contends that because the comments placed the character of the district attorney in issue, they were improper and deprived appellant of a fair trial. We disagree.

■ While the guilt or innocence of an accused does not hinge on the relative merits of opposing counsel's summations, it is beyond dispute that jurors are heavily influenced

7. Because the closing argument was recorded, it was not necessary to object immediately upon the making of the allegedly prejudicial remarks. *See Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977). Such a need exists only when the argument is unrecorded and it is imperative to rule on the issue while the recollection of both counsel and court is fresh. *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976); *Commonwealth v. King,* 227 Pa.Super. 168, 323 A.2d 260 (1974). Of course, even if the argument is recorded, a specific objection must be made at its conclusion. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

by these final appeals. It is thus imperative that counsel for both the Commonwealth and the defendant scrupulously adhere to the principles governing their presentation. The prosecuting attorney is in a particularly sensitive position because he possesses a unique status as both an officer of the court seeking justice, and an agent of the state attempting to assure effective law enforcement. In recognizing this singular station, the courts have carefully circumscribed the permissible range of his closing argument. It has been stated that the prosecutor has an obligation to:

" ' . . . present the facts so that the jury can dispassionately and objectively evaluate the testimony in a sober and reflective frame of mind that will produce judgment warranted by the evidence and not inspired by emotion or passion.' " *Commonwealth v. Gilman,* 470 Pa. 179, 188, 368 A.2d 253, 257 (1977), *quoting Commonwealth v. Harvell,* 458 Pa. 406, 411, 327 A.2d 27, 30 (1974).

Frequently employed by the courts of this Commonwealth, *e. g., Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975), section 5.8 of the A.B.A. Standards Relating to the Prosecution Function provides:

"(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

368

Our courts have thus ruled inappropriate a variety of references in the prosecutor's closing argument. *E. g., Commonwealth v. Mayberry,* 479 Pa. 23, 387 A.2d 815 (1974) (murder case, district attorney argued that defendant would not be guilty only if victim walked through door); *Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977) (expression of personal opinion on jury issues); *Commonwealth v. Williams,* 309 Pa. 529, 164 A. 532 (1932) (reference to defendant's counsel as a defender of murder); *Commonwealth v. Jacobs,* 247 Pa.Super. 373, 372 A.2d 873 (1977) (comment on failure of accused to call any witnesses); *Commonwealth v. Valle,* 240 Pa.Super. 411, 362 A.2d 1021 (1976) (reference to defendant as an "Al Capone"). *See generally* The Prosecutor's Closing Argument in Pennsylvania: The Quasi-Judicial Paradox, 82 Dick.L.Rev. 513 (1978); Note, Prejudicial Remarks of Prosecuting Attorneys in the Pennsylvania Courts, 12 Temp.L.Q. 496 (1937–38).

■ Instantly, we do not believe that the comments of the district attorney so inflamed the passion and prejudices of the jury as to require a new trial. Throughout the trial, counsel for both appellant and his co-defendant attempted to belittle the danger facing the Felds, and to imply that Mrs. Feld's cooperation with her assailants indicated a voluntary and willing consent. The episode related by the district attorney was apparently designed to demonstrate the proposition that one's reaction to a high-stress situation cannot be charted in advance, and further, that that reaction might not be in accord with one's expectations. While the exposition was perhaps inartful, it conveyed a legitimate point on human behavior, and one that could have been taken into account by the jury. It is not our purpose to conceptually chain the imaginative prosecutor, merely to curb excessive zeal prejudicial to the defendant.

Unfortunately, another inference that could be garnered from the narrative was that the district attorney was a personally courageous individual, and, impliedly, a sincere one. Appellant contends this was prejudicial and supports his argument largely by reference to *United States v.*

*Schartner*, 426 F.2d 470 (3d Cir. 1970). In *Schartner*, the prosecuting attorney addressed the jury:

> " 'I have a duty to protect the innocent and to see that the guilty do not escape. *I say to you with all the sincerity I can muster that if you do not convict the defendant the guilty will escape.*' " *Id.* at 478 (emphasis in original).

The court of appeals found these remarks to constitute an invitation to the jury to rely on the government attorney's experience in prosecuting criminals and on his sincerity. This was deemed prejudicial per se, and necessitated reversal. "Neither the prosecutor's general experience nor his moral integrity has anything to do with the evidence in this case. In these respects these statements differ from and are more prejudicial than the unadorned statements of belief we grudgingly approved in *Meisch, supra.*" *Id.*[8] Later third circuit cases, however, have limited *Schartner* to its own peculiar facts. Specifically, the court in *United States v. Somers*, 496 F.2d 723 (3d Cir. 1974), noted that *Schartner* requires a per se reversal only when the prosecutor expresses an opinion on the guilt of a defendant based on evidence not in the record. *See United States v. Benson*, 487 F.2d 978 (3d Cir. 1973); *United States v. LeFevre*, 483 F.2d 477 (3d Cir. 1973).[9]

**8.** In *United States v. Meisch*, 370 F.2d 768 (3d Cir. 1966), the prosecutor told the jury in his opening statement, " 'And I am convinced . . . that defendant * * * is guilty of the crime charged.' " *Id.* at 773.

**9.** Appellant cites *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976), as evidence that our supreme court continues to adhere to the per se reversal rule of *Schartner*. We disagree. In *Maloney*, the prosecuting attorney stated during his closing address:

> " 'It's inconceivable to me that this would happen here in our county in this courtroom. It is. If it should happen, I just don't know. I'd probably lose faith in the judicial system.' " *Id.*, 469 Pa. at 352, 365 A.2d at 1240 (emphasis in original).

The court there cited *Schartner* and noted that the remarks constituted not only a direct statement of opinion, but also a method of injecting the experience and judgment of the district attorney into the question of guilt. While the court concluded that the remarks constituted reversible error, the decision was reached only after a consideration of the nature of the evidence, the trial court's instructions, and the repetition of the statement; the assertion did not ipso

While we are of course not bound by *Schartner*, we acknowledge that although per se rules perform a valuable function in numerous areas of the law, such a short-hand approach is largely inappropriate in the evaluation of prosecutorial misconduct. As has more properly been stated:

" ' . . . [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). See also *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno*, 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon, supra* . . . .' "

*Commonwealth v. Jarvis*, 482 Pa. 598, 605–06, 394 A.2d 483, 487 (1978), *quoting Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). The remarks may have been marginally improvident in this case, but they were certainly not such as to warrant a new trial.

■ Appellant next contends that the evidence was insufficient to sustain the conviction of rape and involuntary deviate sexual intercourse.[10] We must again disagree.

The standard of review in these matters is well settled:

facto necessitate a per se reversal. At any rate, it is more difficult to impute a prejudicial reference to the instant language than it was with the clumsy and blatant wording employed in *Maloney*.

10. In his brief to this court, appellant frames this issue in terms of the lower court's failure to sustain his demurrer to the Commonwealth's evidence. However, as we stated in *Commonwealth v.*

"The test is whether accepting as true all of the evidence, direct or circumstantial, and all reasonable inferences therefrom upon which, if believed, the jury could, properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime with which he has been charged." *Commonwealth v. Mangini*, 478 Pa. 147, 152, 386 A.2d 482, 484–85 (1978).

Appellant focuses particularly on the requirement common to both the crimes of rape and involuntary deviate sexual intercourse; namely, that the assailant must employ forcible compulsion or threats of forcible compulsion that would prevent resistance by a person of reasonable resolution. 18 Pa.C.S. §§ 3121, 3123. Instantly, we find it difficult to envisage how the action of appellant and his cohorts could not be classified as forcible compulsion. Guns were held to the heads of both Mr. and Mrs. Feld during the incident. Mrs. Feld was initially forced at gunpoint to perform fellatio on one of appellant's accomplices.[11]

She later consented to intercourse without physical resistance because of the weakened state of her husband and her concern over his continued safety as well as her own. Confronted by three young men with guns, a 57 year old woman enjoys precious few alternatives in such a situation. This is quite obviously the type of forcible compulsion required by both statutes.

■ Appellant next proffers several arguments relating to his identification by the Felds. First, he argues that the

*Perdie*, 249 Pa.Super. 406, 378 A.2d 359 (1977), if an appellant decides not to rest following the overruling of a demurrer, but elects to put on a case in defense, the correctness of the ruling on the demurrer is no longer an issue available on appeal. *See Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). Nevertheless, we choose here to treat the question as properly presented.

11. Appellant is, of course, liable for the action of his accomplices. 18 Pa.C.S. § 306(b)(3):

"A person is legally accountable for the conduct of another person when: . . . (3) he is an accomplice of such other person in the commission of the offense."

preliminary hearing court erred when it precluded his counsel from making a motion to have him placed in a line-up prior to the hearing. Unfortunately, at no time prior to or during the preliminary hearing did appellant request a line-up. Pa.R.Crim.P. 304(a) (now amended and adopted as Pa.R.Crim.P. 306(a)), provided that "[a]ll pretrial applications for relief shall be in writing and presented under the name and style of application." By not comporting with this procedure, appellant has waived any objection based on the absence of a line-up.

■ Nevertheless, appellant asserts that the request was not waived because the hearing judge preempted any discussion of this prior to the hearing by stating that "this hearing will go on now and there will be no delays." Because counsel had been appointed to the case immediately preceding the hearing, appellant argues that the strict standard of Pa.R.Crim.P. 304(a) should be relaxed. While a hypercritical reading of procedural rules is not always to be condoned, we do not believe that the instant situation demands an ad hoc modification of Rule 304(a). Even if we were to concede that there were extenuating circumstances excusing a *written* request for a line-up, certainly there was no justification for failing to orally raise the point, even in the face of the court's admonition that it would brook no delays. We cannot expect our judges to intuitively recognize when a defendant desires a line-up, and the court is certainly not required to sua sponte call a line-up in all doubtful circumstances.[12]

■ Appellant also reasons that it was error to deny his motion for a pre-trial line-up. We cannot agree. Appellant concedes that there is no absolute right to a line-up in such situations; nor is the trial court's denial of a request for a line-up reversible absent an abuse of discretion. *Common-*

12. We also reject appellant's assertion that the preliminary hearing identification was tainted because the witness gave only a vague description of appellant prior to the hearing. As we have previously recognized, it is not unusual to recall conceptual unities rather than disjointed, particularized features. *See Commonwealth v. Davis*, 264 Pa.Super. 505, 400 A.2d 199 (1979).

*wealth v. Evans*, 460 Pa. 313, 333 A.2d 743 (1975). Appellant argues, however, that such abuse was present both because the preliminary hearing was inherently suggestive and there was little independent basis for the Felds' identification. These reasons are far from convincing.

We have previously rejected the concept that preliminary hearings absent a line-up are inherently suggestive, *Commonwealth v. Evans, supra; Commonwealth v. Sexton*, 246 Pa.Super. 30, 369 A.2d 794 (1977); *Commonwealth v. Garland*, 234 Pa.Super. 241, 339 A.2d 109 (1975). The mere fact that an initial identification occurs in that setting does not conclusively establish that the identification was the result of suggestive influences, and appellant fails to advance any specific facts that would give rise to such a prejudice. Second, both Mr. and Mrs. Feld expressed absolute certainty concerning their identification. Mr. Feld had the opportunity to observe appellant for three to five minutes in a well lighted garage before being placed in the trunk of the car. Mrs. Feld observed appellant for a considerably longer period. When Mr. Feld was questioned as to how he recognized appellant, he answered that his knowledge came from the night of the crime. Mrs. Feld was similarly positive of her identification and its origin.

■ Finally, appellant disputes the decision of the trial court to allow the testimony of Mr. Feld as to the identification he made of appellant at the preliminary hearing. At trial, however, appellant only objected to the form of the question propounded by the prosecutor, *i. e.*, that the question was leading. Indeed, the trial judge queried counsel for appellant's co-defendant, with whom appellant's counsel joined in objection, on precisely this point:

"THE COURT: Is there any objection, Mr. Denker, to the question intending to establish that Norman Guess was identified at a preliminary hearing?

MR. DENKER: No, there is no objection to that."
N.T. 255–56.

The objection is therefore waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Appellant's next objection is based on the following testimony. During direct examination, Mrs. Feld testified that Toy and Michael Guess had in turn entered the back seat and forced her to engage in sexual acts. At that point in the testimony she had as yet made no specific mention of appellant as involved in the sexual activities. The district attorney then asked:

"Q. Mrs. Feld, did you at any time have any sexual relationships with Norman Guess?

MR. JOEL [Counsel for appellant]: That's objected to your Honor; that's objected to.

A. I said I did."

N.T. 41.

The court immediately instructed the jury to disregard the answer, and a discussion in chambers ensued in which appellant's counsel requested a mistrial on the basis that the question was leading and highly prejudicial. The district attorney responded that the question was posed because during prior hearings, the witness had named appellant as an attacker, and the district attorney believed that she neglected to state this at trial due to great mental stress. Ultimately, the court denied the motion for a mistrial, but sustained the objection, struck the question, and granted the district attorney permission to rephrase the question.

After emerging from chambers, the court directed the jury to disregard the question. The following exchange then occurred between the district attorney and Mrs. Feld:

"Q. Who was the person that you had the sexual act with after that act with Joseph Toy on the street that crosses Wistar Street?

A. Norman Guess.

Q. Are you sure it was Norman Guess rather than somebody else?

A. I am sure."

N.T. 46.

Subsequently, the court also questioned Mrs. Feld:

"THE COURT: May I ask a question to clarify a point. You just mentioned an act of sexual intercourse with Norman Guess. Previously you had testified indicating uncertainty as to whether or not there was an act of intercourse with penetration. Is this act of sexual intercourse with Norman Guess that you just mentioned one that you were talking about previously, where there was an uncertainty?

THE WITNESS: The uncertainty was with Toy, not with Norman Guess."

N.T. 46.

■■■■■ Appellant now contends that the district attorney's question broaching appellant's possible sexual activity with Mrs. Feld had "the unavoidable effect of . . . forming [in the jurors' minds] fixed bias and hostility . . . so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). This is erroneous. While the question may have been arguably leading, we have held that the rule on leading questions is to be " 'liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness.' " *Commonwealth v. Gurreri,* 197 Pa.Super. 329, 332, 178 A.2d 808, 809 (1962), *quoting Commonwealth v. Deitrick,* 221 Pa. 7, 15–16, 70 A. 275, 278 (1908); *Commonwealth v. Waiters,* 233 Pa.Super. 83, 87, 334 A.2d 731, 733 (1975). *See Commonwealth v. Gockley,* 411 Pa. 437, 192 A.2d 693 (1963), and cases cited therein. Mrs. Feld was under considerable pressure at trial, a fact recognized by the trial judge. Her response to the objected-to question indicated her belief that she had previously testified to appellant's participation, and the idea was not implanted by the prosecutor's question. It appears clear that the district attorney did not intentionally attempt to prejudice appellant. Moreover, the question was far from the type which

creates an irradicable bias in the minds of the jury, an example of which was presented in *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). In that case, the district attorney asked the defendant during cross-examination: "[W]hat you have said about being beaten by the police is a malicious lie like the rest of your testimony." *Id.*, 445 Pa. at 286, 285 A.2d at 493. While this was patently improper, the distinction here is obvious, and we rule that the trial judge did not abuse his discretion by allowing the district attorney to rephrase the question.

Appellant next argues that his constitutional rights were violated when the court overruled his objection to the introduction of Joseph Toy's confession. The facts are these. During its case in chief, the Commonwealth presented police testimony concerning a statement allegedly made to them by Toy.[13] In it, Toy inculpated both himself and appellant. After review, the court redacted the statement so as to remove any mention of appellant, inserting instead the pronouns "we" and "us". Appellant's timely objection to its introduction was overruled.

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court ruled that a defendant's constitutional rights are impinged when the confession of a co-defendant which implicates the defendant is allowed into evidence, and the

**13.** Appellant and Toy were originally scheduled for a joint trial, but when the latter indicated his intention to plead guilty to several of the charges, the cases were severed. Toy's subsequent decision to enter a general plea of not guilty, however, prompted the calendar judge to again consolidate the cases. Although on appeal appellant alleges error in the lower court's denial of his motion for a severance, the decision is a matter of discretion with the trial judge, and will be reversed only for a manifest abuse of that discretion. *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Tiberi*, 239 Pa.Super. 152, 361 A.2d 318 (1976); *Commonwealth v. Shriner*, 232 Pa.Super. 306, 332 A.2d 501 (1974). Given that the charges grew out of the same criminal act, and that the severance would have entailed extensive repetition of identical testimony, we can perceive no such indiscretion.

co-defendant does not take the stand. Introduction of the confession is objectionable, however, only when it refers to and implicates the defendant. Thus, redaction [14] can be an appropriate method of protecting a defendant's rights under the *Bruton* principle. *See Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977). In *Johnson*, our supreme court quoted with approval the court of appeals in *United States v. Brown*, 160 U.S.App.D.C. 190, 210, 490 F.2d 758, 778 (1974):

> " 'It has been recognized that an efficient method of avoiding unnecessary prejudice where the declarant's state of mind is otherwise relevant is to delete the offensive portions of the statement. . . . Presumably if the statement could not be so altered without completely losing its sense it must be excluded *in toto*. . . .
>
> 'As with most evidentiary questions, especially those involving "balancing," *substantial deference to the trial judge's discretion must necessarily be afforded.*' " *Commonwealth v. Johnson, supra*, 474 Pa. at 412, 378 A.2d at 860 (emphasis added).

Instantly, the court redacted all mention of appellant and inserted "we" and "us". Moreover, the court instructed the jury that they could consider the testimony only with respect to Toy. In its redacted form, the statement merely indicated that more than one person was involved, a point on which both complainants agreed and which neither defense counsel seriously disputed.

Appellant's reliance on *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976), is misplaced. In *Knight*, two co-defendants confessed to a double killing and implicated each other. The statements were admitted into evidence at their joint trial, but the testimony was redacted at the court's

14. In a broad sense, redaction refers to any revision or editing, but in a legal sense, it has come to indicate the alternation of a confession to excise any reference by one joint defendant to any co-defendant. *Commonwealth v. Johnson*, 474 Pa. 410, 411 n. 1, 378 A.2d 859, 860 n. 1 (1977).

direction so as to delete the name of the declarant's co-participant and substitute the words "the other individual named." The trial court's post-verdict assessment of the statements, with which our supreme court agreed, was that " '. . . no one could sit on the jury . . . and not understand that each defendant was referring to the other!' " *Id.*, 469 Pa. at 62, 364 A.2d at 904. Nevertheless, even though the court assumed a violation of *Bruton* principles, it found the error harmless in light of the overwhelming evidence of guilt presented by the Commonwealth. Instantly, quite apart from the detailed nature of the Commonwealth evidence, we are unable to see, in the circumstances of this case, how the lower court could have more vigorously protected appellant's rights.[15] Further redaction would have been useless, acknowledging that more than one abductor was involved, and would have emasculated the statement. Its introduction was therefore not erroneous.

Appellant finally contends that the lower court erred in denying his motion to dismiss the indictment for robbery or, in the alternative, transfer trial of these charges to Montgomery County. We are constrained to agree in part.

As a general rule, the subject matter jurisdiction of criminal courts extends only to offenses committed within the county of trial. *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A.2d 43 (1965); *Commonwealth v. Frank*, 263 Pa.Super. 452, 398 A.2d 663 (1979); *Commonwealth v. Tumolo*, 223 Pa.Super. 189, 299 A.2d 15 (1972); *Commonwealth v. Simeone*, 222 Pa.Super. 376, 294 A.2d 921 (1972). Instantly, appellant was charged with two counts of robbery; the first (Bill No. 996) involved the robbery of

---

**15.** We note that in *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977), the lower court in redacting the confession eliminated all references even to the pronoun "we". While such extreme caution is laudable, we do not believe it absolutely essential to avoid a *Bruton* problem. As the court noted, "These questions must be left within the discretion of the court to be decided on a case by case basis." *Id.*, 474 Pa. at 413, 378 A.2d at 861.

Florence Feld and the taking of one cigarette case and several pieces of jewelry; the second (Bill No. 1002) concerned the robbery of Mr. Feld and the taking of his automobile and a sum of cash. As to the latter, the actual taking of the vehicle occurred in Philadelphia County when Mr. Feld was ejected from the car. We thus have no difficulty in placing the locus of the crime in Philadelphia and consequently holding that the courts of that county properly exercised jurisdiction.

As to the robbery of Mrs. Feld, however, the evidence indicates that none of the events associated with that crime transpired in Philadelphia County. Her purse was taken and the force required to raise the charge to robbery was exerted *prior to* the journey to Philadelphia. The locus of the crime was therefore wholly in Montgomery County. Nevertheless, the Commonwealth would argue, as did the Motions Court, that Philadelphia County had jurisdiction over the crime pursuant to the "Journey Act", Act of March 31, 1860, P.L. 427, § 49, 19 P.S. § 525,[16] which provides in pertinent part:

> "In order to obviate the difficulty of proof as to offenses committed during journeys from place to place, in any indictment for felony or misdemeanor committed on any person or on any property upon any stage coach, stage, wagon, railway car or other such carriage whatever employed in any journey, it shall be sufficient to allege that such felony or misdemeanor was committed within any county or place through any part whereof such coach, wagon, cart, car or other carriage shall have passed in the course of the journey during which such felony or misdemeanor shall have been committed; . . . and every such felony or misdemeanor . . . shall and may inquired of, tried, determined and punished in the county

16. This section was repealed by § 2(a) of the Act of April 28, 1978, P.L. 202, No. 53, to take effect two years after the generally effective date of June 27, 1978.

or place within which the same shall be so alleged to have been committed, in the same manner as if it had actually been committed therein."

Instantly, however, the Act is not applicable. There is no need to "obviate the difficulty of proof" because the locus of the crime is certain. The situation *sub judice* is similar to *Commonwealth v. Tarsnane*, 170 Pa.Super. 265, 85 A.2d 606 (1952), in which the defendant had enticed a child into his car, drove to a vacant house, assaulted the child in the house, and later returned the child to her own neighborhood. We there held that the Act did not apply because the assault was not committed in a moving vehicle or during a temporary stop in a longer journey, but "in a fixed building susceptible of exact location." *Id.*, 170 Pa.Super. at 268, 85 A.2d at 608.

Presently, we are capable of determining the precise location of the crime; namely, the parking garage situated in Montgomery County. We thus conclude that because the Philadelphia County Court lacked jurisdiction to try the matter, the conviction on Bill No. 996 must be vacated.[17]

The judgment of sentence on Bill No. 996 for robbery is therefore vacated; in all other respects, the judgment of sentence of the court below is affirmed.

SPAETH, J., concurs in the result.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

17. Of course, this does not bar the Commonwealth from instituting proper proceedings against appellant in Montgomery County for these charges. *See* 18 Pa.C.S. § 112(1):

"A prosecution is not a bar within the meaning of section 109 of this title (relating to when prosecution barred by former prosecution for same offense) through section 111 of this title (relating to when prosecution barred by former prosecution in another jurisdiction) under any of the following circumstances:

(1) The former prosecution was before a court which lacked jurisdiction over the defendant or the offense."